[No. 3,537.]

## THE PEOPLE *v.* MONROE ASHBURY, AUDITOR OF THE CITY AND COUNTY OF SAN FRANCISCO.

MAKING COPY OF ASSESSMENT BOOK BY AUDITOR.—The Auditor, in making a duplicate of the assessment book for the Tax Collector, must observe and follow such alterations as have been made by the Board of Supervisors in the exercise of their power in equalizing the assessed value of property, but he must disregard an order of the Board canceling an assessment, or any order of the Board by which it assumes an authority not conferred upon it by law.

IDEM.—While the Auditor, in making a copy of the assessment book for the Tax Collector, cannot review or correct the errors of the Board of Supervisors while acting within the sphere of their authority, still he must disregard any order of the Board which it had no jurisdiction to make.

POWER OF SUPERVISORS TO CANCEL ASSESSMENT.—A Board of Supervisors has no authority to cancel an assessment of property made by the Assessor and placed by him on the assessment book, and if the Board make such order it is a nullity.

WRIT OF MANDATE TO AUDITOR.—The Auditor will be compelled, by writ of mandate, to deliver to the Tax Collector a correct duplicate of the assessment book, as made by the Assessor, with such alterations only as have been made by the Board of Supervisors while acting within the sphere of their authority.

THE facts are stated in the opinion.

*John L. Love, Attorney General,* for Petitioner.

*W. C. Burnett,* for Respondent.

By the Court, WALLACE, C. J.:

Upon petition of the Attorney General, an alternative writ of mandamus was issued and served upon the respondent, who has made answer thereto. The cause was argued and submitted for decision upon the petition and the answer, no essential issue of fact appearing upon the record.

It appears that on the first day of July, 1872, the Assessor of the City and County of San Francisco, having completed the assessment book, delivered it to the Clerk of the Board of Supervisors, and that among other assessments therein appearing, were the following:

"No. 4,573—Masonic Savings and Loan Bank, assessed at $365,000; No. 4,578—Savings and Loan Society, assessed at $7,968,740 40; No. 4,577—Societe Francaise d'Epargnes, assessed at $4,957,583 73; No. 4,571—German Savings and Loan Society, assessed at $2,629,021; No. 4,574—Odd Fellows' Savings Bank, assessed at $3,080,793; No. 4,579—San Francisco Savings Union, assessed at $4,227,940; No: 4,572—Hibernia Savings and Loan Society, assessed at $11,354,532; No. 4,157—Land Mortgage Union of California, assessed at $33,916; No. 4,294—Security Savings Bank, assessed at $313,962 77; No. ———Humboldt Savings and Loan Society, assessed at $507,303."

The Board of Supervisors sitting thereafter for the purpose of equalizing assessments, entered upon its records an order purporting to cancel each and all of these enumerated assessments, and on the next day thereafter the Clerk of the

Board delivered the assessment book to the Auditor. The assessment book, as thus delivered to the Auditor, was verified by the affidavit of the Clerk of the Board in the manner required by law, and to the effect that all the alterations directed by the Board had been made and entered thereon.

The assessment book, as thus delivered to the Auditor, showed upon its face the fact that the several assessments above enumerated had been canceled, or attempted to be canceled, upon the book, by the order of the Board; but it is not pretended that the original entry of these assessments had been so canceled or erased as to be rendered illegible in any respect. It appears that the Auditor, however, in making up the duplicate assessment book, which he is required to deliver to the Tax Collector, refuses to copy thereon any of these enumerated assessments, on the ground that he has no authority to do so. It is urged in support of the correctness of this position, that it is the duty of the respondent, as Auditor, in making up the copy for the Collector, to observe and follow such alterations as appear to have been made thereon by the direction of the Board, and that he has no authority to disregard them in any instance. It may be admitted that if the alteration appearing to have been made by the Board be one within, or which might under any conceivable circumstances be within the power and authority of the Board to make upon the assessment roll, it would be the duty of the Auditor to observe it in making the duplicate tax book for the use of the Collector. Thus, an order of the Board increasing or reducing the valuation of property borne upon the assessment book being the determination of a complaint made in regard to the Assessor's value of the property, under sections three thousand six hundred and seventy-three and three thousand six hundred and seventy-four of the Act, could not be properly disregarded by the Auditor in subsequently making the copy of

the book, or adding up the valuations thereon. He could not entertain a question for himself, as to the correctness or incorrectness in point of law, or in any other respect, of the action of the Board in the supposed case, for the obvious reason that by the sections of the statute referred to, questions of mere valuation of property assessed are for the Board and not for the Auditor to determine. But there is a wide difference between the case supposed and that actually presented here. While it is the duty of the Auditor to observe the determination of the Board as to matters coming within their rightful jurisdiction, under the provisions of the statutes referred to, without undertaking for himself to correct any error, real or supposed, which the Board may have committed in the exercise of their jurisdiction, it is no less his duty to disregard any order or proceeding of the Board by which it assumes an authority not conferred upon it by the law.

In *People* v. *Board of Supervisors*, ante, p. 613, we held, and accordingly adjudged, that the order, now again brought forward here, to sustain the action of the Auditor, by which the Board assumed to remove these assessments from the Assessor's book, was null and void in the absolute sense, because *the statute had not conferred authority upon the Board to cancel or strike out an assessment under any circumstances.* That no such power is given is obvious, upon examination of the Act itself, and that, unless it be found there, it cannot exist, is too clear to require argument.

The order being a mere nullity, is of course to be disregarded altogether; the lines or marks placed upon the assessment roll, and intended to indicate that an assessment found thereon has been canceled or set aside by order of the Board, are nullities also, as much so as if placed there by any other person or tribunal not having the semblance of authority to alter the book in that respect.

This view disposes of the case; for upon looking into the

record, we do not find such a case presented as would justify us in entering upon a consideration of the constitutional question supposed to be involved and so ably argued by one of the counsel for the respondent.

We are of opinion that a peremptory writ of mandamus issue as prayed for, returnable on the 31st day of October, 1872, at 10 o'clock A. M.